UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DONNIE BOBO,

              Plaintiff,

v.

STEVEN ERICSONS,

              Defendant.
_____/

Case No. 1:22-cv-1122

Honorable Sally J. Berens

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

      Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues dentist Steven Ericsons in his official and personal capacities.

Plaintiff alleges that Defendant Ericsons pulled one of Plaintiff's wisdom teeth on June 27, 2022. (ECF No. 1, PageID.2) Defendant Ericsons was unable to pull the other wisdom tooth,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

stating that Plaintiff needed to see a specialist. (*Id.*) Plaintiff claims that he has "been in excruciating pain . . . since this process ha[s] started." (*Id.*)

On September 6, 2022, Plaintiff went to see Defendant Ericsons to have two teeth filled, corrected, and strengthened. (*Id.*) He claims that never happened. (*Id.*) Defendant Ericsons told Plaintiff that his teeth would be very sensitive for 6 months, especially when eating. (*Id.*, PageID.2–3.) A week later, Plaintiff saw Defendant Ericsons again so that he could "correct the problem he had created with [Plaintiff's] mouth being in so much excruciating pain constantly." (*Id.*, PageID.3.)

Plaintiff saw Defendant Ericsons again on September 20, 2022. (*Id.*) Plaintiff contends that Defendant Ericsons was unprofessional and "became loud and angry." (*Id.*) Defendant Ericsons placed his hand in Plaintiff's face, and a health care officer intervened, admonishing Defendant Ericsons. (*Id.*) Plaintiff filed a grievance against Defendant Ericsons about the incident. (*Id.*)

Plaintiff saw Defendant Ericsons again on October 3, 2022. (*Id.*) Defendant Ericsons prescribed 500 milligrams of amoxicillin for Plaintiff to take from October 3–14, 2022. (*Id.*) Defendant Ericsons told Plaintiff that he needed to see a specialist and that Defendant Ericsons would be submitting the request to do so for approval. (*Id.*, PageID.4.) Plaintiff contends that as of November 15, 2022, he had yet to see a specialist despite being in excruciating pain and experiencing difficulties eating. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, the ADA, and the RA. (*Id.*, PageID.5.) He also asserts state law claims of gross negligence and intentional infliction of emotional distress. (*Id.*) Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.6.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. ADA and RA Claims

As noted above, Plaintiff asserts violations of the ADA and RA, presumably based upon his contention that Defendant Ericsons has not provided adequate dental care. (ECF No. 1, PageID.5.) The Court presumes that these claims are brought pursuant to Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the RA, 29 U.S.C. § 794(a).

5

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008), *abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Both Title II of the ADA and the RA apply to state prisons and inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs,

---

[1] Similarly, Section 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

or activities" in Section 12132 includes recreational, medical, educational, and vocational prison programs); *Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 WL 7890769, at *2 (6th Cir. Oct. 31, 2018) ("The ADA and RA do apply to state prisons."). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named Defendant Ericsons in his individual and official capacities.

Plaintiff's factual allegations, however, fail to suggest that Defendant Ericsons denied adequate dental treatment because of any disability that Plaintiff may suffer. As the United States Court of Appeals has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2] Plaintiff, therefore, has failed to state

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a

claims against Defendant Ericsons for violations of the ADA and RA, and such claims will be dismissed.

### B. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff contends that Defendant Ericsons violated his Eighth Amendment rights by failing to provide adequate dental treatment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

---

prison's simply failing to attend to the medical needs of its disabled prisoners."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff

9

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations suffice to show that he has serious dental needs. His allegations fall short, however, with respect to Defendant Ericsons's response to his needs. Plaintiff's complaint indicates that he has been seen by Defendant Ericsons numerous times. Plaintiff first saw him on

11

June 27, 2022, for extraction of a wisdom tooth. (ECF No. 1, PageID.2.) Defendant Ericsons told Plaintiff that he would need to see a specialist to have the other wisdom tooth extracted. (*Id.*) To the extent that Plaintiff believes Defendant Ericson should have extracted the other wisdom tooth himself, differences in judgment between Plaintiff and Defendant Ericsons are not enough to set forth a deliberate indifference claim. *See Darrah*, 865 F.3d at 372; *Briggs*, 801 F. App'x at 959; *Mitchell*, 553 F. App'x at 605.

Plaintiff next saw Defendant Ericsons on September 6, 2022, but claims that he did not have two teeth filled and corrected at that visit. (ECF No. 1, PageID.2.) However, Plaintiff saw Defendant Ericsons again a week later for dental work "to correct the problem." (*Id.*, PageID.3.) Plaintiff saw Defendant Ericsons again on September 20, 2022. While Plaintiff contends that Defendant Ericsons acted unprofessionally and did not give him anything for his pain during this visit, these allegations are insufficient to rise to the level of deliberate indifference. *See, e.g.*, *Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004) (noting that differences between a prisoner and medical staff over the kind of treatment a prisoner needs do not constitute deliberate indifference); *Fennell v. Bonner*, No. 2:20-cv-2844-JTF-atc, 2021 WL 3891590, at *3 (W.D. Tenn. Aug. 31, 2021) (noting that "interpersonal conflict[s]," including allegations that medical staff acted in an unprofessional manner, "do[] not equate with unconstitutional deliberate indifference"). Moreover, Plaintiff acknowledges that on October 3, 2022, Defendant Ericsons prescribed 500 mg of amoxycillin for Plaintiff to take for his dental pain. (*Id.*)

Plaintiff appears to suggest that Defendant Ericsons is responsible for the delay in Plaintiff seeing the specialist for his dental needs. Plaintiff's complaint, however, is devoid of any allegations to support that suggestion. Plaintiff states that on October 3, 2022, Defendant Ericsons told Plaintiff that he would need to see a specialist and would be submitting a form to obtain that

approval. (*Id.*, PageID.4.) Although Plaintiff claims that he has not seen a specialist as of November 15, 2022, there are no facts alleged to indicate that this delay is attributable to Defendant Ericsons.[2]

In sum, Plaintiff has failed to allege facts suggesting that Defendant Ericsons was deliberately indifferent to his dental needs. Instead, Plaintiff's complaint establishes that he has seen Defendant Ericsons on multiple occasions, that Defendant Ericsons eventually prescribed medication to Plaintiff for his pain, and that Defendant Ericsons has submitted a request for Plaintiff to be approved to see a specialist. Plaintiff simply has not shown that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller*, 408 F.3d at 819 (quoting *Waldrop*, 871 F.2d at 1033). Plaintiff's complaint amounts to no more than a difference in opinion between him and Defendant Ericsons, which is not enough for a deliberate indifference claim. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Ericsons.

C. **State Law Claims**

Plaintiff also asserts state law claims of gross negligence and intentional infliction of emotional distress against Defendant Ericsons. (ECF No. 1, PageID.5.) Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v.*

---

[2] This does not mean that the delay is appropriate or that the delay does not potentially evidence deliberate indifference to a serious medical need. It simply means that Plaintiff has failed to allege facts that support an inference that Defendant Ericsons is responsible for the delay.

13

*Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over those claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   December 13, 2022                              /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge